PAVY, Judge..
In this malpractice suit, plaintiff appeals from a judgment based on an adverse jury verdict, general in form. Named as defendants were Dr. Philip Giuffre, Bunkie General Hospital and its insurer, Argonaut Insurance Company. Appellant concedes nonliability of the hospital and its insurer. Accordingly, only the claim against Dr. Giuffre is before us for consideration.
In the early morning hours of December S, 1973, plaintiff experienced intense abdominal pains and consulted Dr. Giuffre, a general practitioner at Cottonport, who diagnosed plaintiff’s condition as acute appendicitis and recommended immediate surgery. Later that morning, Dr. Giuffre removed plaintiff’s appendix. Upon recovering from the anesthesia, plaintiff noticed two loose teeth which had to be extracted. A few days later, he discovered a bruise-like condition in his right back. From sometime shortly after the operation he experienced a swelling or bulging effect in *619 his abdomen. The day after his discharge from the hospital, an abscess at the incision site burst and drained a considerable amount of pus. During the postoperative period, Dr. Giuffre and Dr. N. E. Gauthier attended plaintiff. On March 29, 1974, at Mother Cabrini Hospital in Alexandria, Dr. John Boese operated on plaintiff and repaired a direct inguinal hernia and an in-cisional hernia at the site of the appendectomy. Plaintiff claims damages for loss of the two teeth, the bruised condition of his back, the inguinal hernia, torn muscles, intestinal adhesions and the incisional hernia.
The records of both hospitals were admitted in evidence. Dr Boese did not testify because of an emergency situation in his practice. Dr. Gauthier, who assisted in the appendectomy, did not testify. Hi's deposition was taken and is in the record but was not introduced in evidence. Plaintiff’s case in chief consisted of cross-examination of Dr. Giuffre, his own testimony and that of several lay witnesses who related his postoperative experiences. Except for the cross-examination by plaintiff, Dr. Giuffre did not testify and a stipulation was entered on behalf of his case concerning his education, qualifications, locality of practice and expertise in the field of general medicine and surgery. Defendant’s witnesses were the nurse anesthetist, the scrub nurse who assisted the surgeon primarily by handing him surgical instruments, the surgery maid who disinfected the operating room after each operation, Dr. Richard Morris, an anesthesiologist from Alexandria, Dr. John DiLeo, a surgeon from New Orleans, Dr. Joseph Brierre, a pathologist and infection control specialist, from Lafayette and Dr. S. R. Abrahamson, a general practitioner from Marksville with considerable experience in surgery and anesthesiology.
It is well settled that a physician or surgeon is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances by members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case. See Meyer v. St. Paul Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954).
Dr. Giuffre testified that he proceeded with a McBurney incision, the recommended and usual one for appendectomy on a male. The appendix was not in its normal location, and he proceeded incising upward to locate the appendix which he finally found near the stomach. In incising upward, it became necessary to cut or split through upper abdominal muscles, sheaths and fatty tissue. The appendix was not ruptured but was suppurative (pusfilled). The expert testimony was without exception that Dr. Giuffre was confronted with an emergency and that the appendix could have ruptured any time and jeopardized plaintiff’s life, that the decision to operate was correct, that the general surgical procedure employed by the doctor was correct in that he had to assume the appendix to be in its normal location and that he had no alternative but to proceed into the upper abdomen to locate and remove the potentially dangerous appendix.
The experts were extremely emphatic that there could be no causal connection between the operation and the inguinal hernia. The inguinal canal (into which the hernia protruded) serves to encase the spermatic cord running from the testicles to the bladder and is so removed in space and so unrelated in anatomy and physiology to the area affected by the incision that there could be no possible relation between the incision and that hernia.
Dr. Gauthier who assisted Dr. Giuffre did not testify. His deposition was taken and is in the record but was not introduced in evidence. Apparently he would have been a witness friendly to Dr. Giuffre, but we cannot say that, under these circumstances, any significant presumption must arise from his failure to testify concerning the details of the operation. Except for *620 Dr. Gauthier, all persons involved in the operation testified that there were no falls, knocks, bumping or other unusual incidents of force which could have caused the alleged bruise to plaintiff’s back. The experts explained that, in an operation such as this, metal retractors are used to position the abdominal walls and the internal structures so as to enable the surgeon to properly observe the area involved and to proceed properly. In positioning these structures by the use of the retractors, some force is necessary to achieve the required exposure. This force causes damage to the tissues with rupture of minor blood vessels. The blood oozing out tends to filter downward (in a supinely positioned patient) and clots or forms a hematoma or bruise-like condition near the patient’s back. This condition is not rare and is considered an expected or inherent risk of the operation.
There was no evidence of intestinal adhesions. The incisional hernia and the torn muscles at the incision site are essentially the same thing or at least both caused by the postoperative infection which beset plaintiff. This was the uncon-tradicted testimony of the experts. Similarly uniform was their opinion that postoperative infection from a suppurative appendix is probable. One of the experts cited a study of over 400 suppurative appendix operations with the additional incision into the upper abdominal area. The incidence of incisional infection in these was approximately 85 percent. It was also established that susceptibility to infection is increased in patients with obesity like the plaintiff herein.
The loosening of plaintiff’s two teeth resulted from an attempted intubation. This is a standard procedure in most surgery. It is usually accomplished while the patient is asleep from a shot or preliminary anesthesia. It consists of the insertion of a plastic (indotracheal) tube into the windpipe. To clear - a passageway for this insertion and for proper observation, a metal device known as a laryngoscope is employed. It is inserted into the mouth and throat and varying degrees of force must be used to achieve the desired result. The suggestion is made that thick-necked people (as was plaintiff) are so difficult to in-tubate that it ought not to have been tried at all. There is testimony that this difficulty is not always the case. Regardless of any anticipated difficulty in intubation, there was ample justification for the attempted intubation because of the benefits therefrom. There are (1) more precise control of the flow of anesthesia into the lungs, (2) control of the patient’s respiration, (3) ability to suction (by means of a catheter inserted within the indotracheal tube) mucous which accumulates in the lungs during operations and could cause serious respiratory problems, and (4) by inflating the indotracheal tube to seal off the windpipe (except for the conduit within that tube), the preventing of entry of regurgitated food into the lungs which could cause suffocation. It is argued that, because plaintiff had not eaten since the night before, the stomach was empty, so that there was no danger of regurgitation and intubation should not have been attempted. The evidence is far from conclusive that plaintiff would not have regurgitated and, even if so, we think the attempted intubation would have been justified because of the other listed benefits.
The experts’ testimony is that damaging of teeth from intubation is uncommon but is considered an inherent risk in surgery. The nurse anesthetist first attempted intu-bation for a considerable time. Then Dr. Giuffre proceeded to attempt it and took over the use of the laryngoscope. They both testified that it was during the doctor’s attempt to intubate that the teeth became loose. Dr. Giuffre testified that he used no more force than the anesthetist and claimed he- used more skill. He did not explicitly explain the exact physical or mechanical techniques employed by him in using the laryngoscope but the evidence does not show there is any one particular safe way of using that instrument or that Dr. Giuffre employed an improper procedure. It could be that the combined force on the teeth from both attempts caused the *621 loosening. It could be that the teeth were abnormally susceptible to loosening. In view of the several and valuable benefits to be achieved from intubation, it could be that force in use of the laryngoscope which could do no more than damage the teeth would have been justified in any event and could not be considered actionable negligence.
Appellant relies to a great extent on the doctrine of res ipsa loquitur. The judge charged the jury as to that doctrine and we think the instruction was substantially correct. Despite the presumption which arises from that rule, we cannot say that the jury erroneously concluded that the defendant-doctor was not negligent. There was ample evidence in the record to explain a nonnegligent cause or origin for each of plaintiff’s complaints. Under the manifest error rule we must let the jury verdict stand. See Canter v. Koehring Co., 283 So.2d 716 (S.Ct., 1973).
For the reasons assigned the judgment of the district court is affirmed.
Affirmed.